UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MIKE COZART AND BLYTHE COZART, Husband and Wife, | CASE NO. 3:22-cv-05510-RJB |
| Plaintiffs, | ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT |
| v. | |
| USAA CASUALTY INSURANCE COMPANY, an insurance company, | |
| Defendant. | |

This matter comes before the Court on Defendant USAA Casualty Insurance Company's ("USAA") Motion for Summary Judgment (Dkt. 24) and Plaintiffs Mike and Blythe Cozart's Motion for Summary Judgment (Dkt. 25). The Court has considered the pleadings filed in support of and in opposition to the motions and the file herein.

In this case, the Cozarts contend that USAA breached their insurance contract, acted in bad faith, and violated Washington law in connection with its handling of property damage claims for their home on Bainbridge Island, Washington. Dkt. 1. The parties now cross move

for summary judgment.  For the reasons provided below, USAA's motion (Dkt. 24) should be granted and the Cozarts' motion (Dkt. 25) should be denied.

## I.    RELEVANT FACTS AND PROCEDURAL HISTORY

### A.  FACTS

In February of 2018, the Cozarts contracted with Agate Pass Enterprises, Inc. ("Agate") for construction of their home.  Dkt. 24-2 at 24, 49 and 73.  The Cozarts entered an insurance contract with USAA to cover the home with a policy period of April 21, 2018 to April 21, 2019.  Dkt. 24-2 at 90-140.  While the policy covers "sudden and accidental" tangible property damage at the home, it contains several exclusions, including for "faulty, negligent, inadequate or defective . . . design, specifications, workmanship, repair, construction . . . [or] materials used in construction." *Id.* at 112.  Additionally, it requires that lawsuits be brought "within two years after the date of loss." *Id.* at 117.

Home construction included installation of a hydronic radiant heating system below the hardwood floors by subcontractors.  Dkt. 24-2 at 25.  While the home was still under construction, in mid-February 2019, Agate informed the Cozarts that the radiant heating system damaged the hardwood floors. *Id.* at 17 and 25.  The system overheated by as much as 106 degrees Fahrenheit resulting in permanent damage - the hardwood floors were warped, cracked, and had separated from other boards. *Id.* at 26.

Initially, according to the Cozarts, Agate assured them that the house was under warranty; it would (or ensure the subcontractors would) fix the floors.  Dkt. 24-2 at 26-27.  The Cozarts moved into the house in April of 2019, even though the floors had not been fixed. *Id.* at 18 and 28.  According to Mrs. Cozart, sometime in the late spring of 2019, Agate informed them that it had turned the matter of the damage floors overt to its insurance company who was trying to

work with the subcontractors' insurance companies.  *Id.* at 18.  This effort was to no avail, so Agate's president told the Cozarts they would have to sue Agate over the floors.  *Id.*

On July 1, 2019, Mr. Cozart called USAA, "to ask about coverage and inform them of what had occurred at the house." Dkt. 24-2 at 31. A transcript of the call is attached to this order as "Exhibit A."  Mr. Cozart testified that he remembered the "general response [from USAA] was that it wouldn't be covered.  However there was an outside chance . . . that it might be covered . . ."  *Id.*  Mr. Cozart testified that at the time of the call, they did not know what caused the damage.  Dkt. 25-1 at 66.  While USAA Adjuster Garza mentioned getting a technician, Mr. Cozart testified that he didn't know what kind of technician she was referring to and felt that he was being "given a polite no and, you know, an outside chance, but probably no."  *Id.* at 67.

In a July 14, 2019 inspection of the floors, it was noted that to stay within the manufacturer's warranty, the flooring had to be kept at between 60-80 degrees.  Dkt. 24-1 at 32.  Further, the inspector, Mike Osborn, a "NWFA Certified Wood Floor Inspector," noted that the heating system required an "outside temperature sensor and in-floor direct contact temperature sensors."  *Id.* at 31.  The house was inspected again on March 9, 2020 and the floors' distortion was observed as "slightly more severe."  *Id.* at 33.

On July 10, 2020, the Cozarts sued Agate over the floor damage in state court.  Dkt. 24-2 at 64-71.  In their state court complaint, the Cozarts alleged that Agate, contrary to their contract, "failed to install in-floor direct contact temperature sensors in the radiant heat system as required by the manufacturer."  *Id.* at 67.  They also contended that Agate failed "to nail and glue down the flooring as required by the manufacturer."  *Id.*  The Cozarts asserted claims for breach of contract and unjust enrichment against Agate.  *Id.* at 69-70.

1    The Cozarts moved out of the house in late June 2021/early July 2021 so that the floors could

2    be repaired.  Dkt. 24-2 at 18-19.  The floor repairs were complete in November of 2021.  *Id*.

3    The case against Agate settled for $300,000 on April 19, 2022.  Dkt. 24-2 at 41 and 145.  The

4    Cozarts paid $112,000 to lawyers to represent them in the Agate lawsuit; these fees were not

5    deducted from the settlement amount.  *Id.* at 32-33; 38 and 83.  As part of the settlement with

6    Agate, the Cozarts assigned any and all claims the Cozarts had against USAA to Agate.  Dkt. 24-

7    2 at 146.  According to Mr. Cozart he and his wife "get nothing" out of this case.  *Id.* at 39.

8    USAA's Manager of Claims Operations, Steve Rock, states that a June 13, 2022 pre-

9    litigation demand letter from Agate's insurance company's lawyers was the next time USAA

10   was contacted about the February 2019 floor damage.  Dkt. 24-2 at 12.  After Agate's insurance

11   company's lawyers sent supplemental information and some further discussion occurred, USAA

12   denied the claim on July 8, 2022 and July 21, 2022 based on the contract's two year suit

13   limitation clause.  Dkt. 24-1 at 3-4.

14   **B.  PROCEDURAL HISTORY**

15   On July 14, 2022, this case was filed. Dkt. 1.  The Plaintiffs (Mr. and Mrs. Cozarts' assignee,

16   Agate, suing in the Cozarts' name) assert causes of action for breach of contract, bad faith,

17   violations of Washington's Insurance Fair Conduct Act, RCW 48.30.015 ("IFCA") and its

18   regulations, and Washington's Consumer Protection Act ("CPA").  *Id.*

19   **C.  PENDING MOTIONS AND ORGANIZATION OF OPINION**

20   Both parties filed cross motions for summary judgment.  Dkts. 24 and 25.  Key to both

21   parties' motions is whether the July 1, 2019 call between Mr. Cozart and USAA Adjuster Garza

22   constituted a "claim" under the policy.

23

24

1    Arguing that the call was not a "claim," USAA asserts that it did not breach the contract, it

2    did not commit bad faith, or violate IFCA, regulations, or the CPA.  Dkts. 24, 27 and 29.  USAA

3    also maintains that its handling of the June 13, 2022 pre-litigation demand letter, to the extent it

4    was a claim, was proper.  *Id.*

5    Arguing that Mr. Cozart made a claim against his insurance in the July 1, 2019 call, the

6    Plaintiffs (Mr. and Mrs. Cozarts' assignee, Agate, suing in the Cozarts' name) argue that USAA

7    breached the contract when it denied the Cozarts benefits.  Dkts. 25, 26 and 30.  They contend

8    that USAA failed to perform a reasonable investigation before denying their claim and denial of

9    their claim without reasonable justification was bad faith.  *Id.*  The Plaintiffs assert that summary

10   judgment on their IFCA cause of action should be granted, pointing to six separate claims

11   handling regulations.  *Id.*  They argue that summary judgment on their CPA cause of action is

12   warranted due to USAA's bad faith and violation of various regulations.  *Id.*

13   This opinion will first provide the applicable law, standard on summary judgment, and

14   then address whether the July 1, 2019 call between Mr. Cozart and USAA Adjuster Garza

15   constituted a "claim" under the policy.  The parties' arguments will then be addressed by cause

16   of action:  breach of contract, bad faith, violation of IFCA, and violation of the CPA.

## II.  <u>DISCUSSION</u>

### A.  WASHINGTON SUBSTANTIVE LAW AND FEDERAL PROCEDURAL LAW APPLIES

Under the rule of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts sitting in

diversity jurisdiction, as is the case here, apply state substantive law and federal procedural law.

*Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996). In applying Washington

law, the Court must apply the law as it believes the Washington Supreme Court would apply it.

*Gravquick A/S v. Trimble Navigation Intern. Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003). "W]here

1    there is no convincing evidence that the state supreme court would decide differently, a federal

2    court is obligated to follow the decisions of the state's intermediate appellate courts." *Vestar*

3    *Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir.2001) (*cleaned up*).

4    **B.  SUMMARY JUDGMENT STANDARD**

5         Summary judgment is proper only if the pleadings, the discovery and disclosure materials

6    on file, and any affidavits show that there is no genuine issue as to any material fact and that the

7    movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). The moving party is

8    entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

9    showing on an essential element of a claim in the case on which the nonmoving party has the

10   burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue

11   of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find

12   for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

13   (1986) (nonmoving party must present specific, significant probative evidence, not simply "some

14   metaphysical doubt.").  Conversely, a genuine dispute over a material fact exists if there is

15   sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve

16   the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 253 (1986);

17   *T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

18        The determination of the existence of a material fact is often a close question.  The court

19   must consider the substantive evidentiary burden that the nonmoving party must meet at trial,

20   which is a preponderance of the evidence in most civil cases.  *Anderson,* 477 U.S. at 254; *T.W.*

21   *Elect.,* 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor of the

22   nonmoving party only when the facts specifically attested by that party contradict facts

23   specifically attested by the moving party.  The nonmoving party may not merely state that it will

24

discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888–89 (1990).

### C.  JULY 1, 2019 CALL – CLAIM FOR COVERAGE UNDER THE POLICY?

The first issue to be decided is whether the July 1, 2019 call between Mr. Cozart and USAA Adjuster Garza constituted a "claim" under the USAA policy.

The parties fail to point to the definition of what constitutes a "claim" under the insurance contract or Washington law, and the undersigned found none. In support of their assertion that the July 1, 2019 call constituted a "claim," the Plaintiffs point to Washington Administrative Code ("WAC") WAC 284-30-320(14). WAC 284-30-320(14), provides that the "notification of claim," is "any notification, whether in writing or other means acceptable under the terms of an insurance policy or insurance contract, to the insurer or its agent, by a claimant, which reasonably apprises the insurer of the facts pertinent to a claim." This definition presumes that a "claim" is made and sets out when an insurer is notified of that claim. It does not define a "claim."

Black's Law Dictionary defines "claim," in pertinent part, as follows: "[t]o demand as one's own or as one's right; to assert; to urge; to insist. A cause of action. Means by or through which claimant obtains possession or enjoyment of privilege or thing. Demand for money or property as of right, e.g. insurance claim." Black's Law Dictionary at 247. "Claim" is also defined as "[a] demand for something as rightful or due ... [a] demand for payment in accordance with an insurance policy or other formal arrangement ... [t]he sum of money demanded." American Heritage Dictionary at 341.

1    Even assuming facts in a light most favorable to the Plaintiffs, the July 1, 2019 call between

2    Mr. Cozart and USAA Adjuster Garza was not a claim.  Adjuster Garza repeatedly tells Mr.

3    Cozart that she is opening a report, not a claim.  *See e.g.* Dkt. 24-2 at 46.  Later in the call, she

4    uses conditional language "if a claim does get opened . . ." as does Mr. Cozart.  *E.g.* Dkt. 24-2 at

5    48.  Throughout the call, they discuss the policy, exclusions, and various coverage possibilities,

6    and at the end of the call, Mr. Cozart says, "I think it says in there [referring to the policy] that

7    I've got 12 months to make a claim, I think."  Dkt. 24-2 at 61.  Adjuster Garza responds with

8    "Awesome. Yeah. Yeah. And you, technically, want it during, you know, that policy period.  As

9    long as it's during the policy period, then you're good."  *Id.*   Mr. Cozart requested a copy of the

10   policy and Adjuster Garza sent it to him.  Dkt. 24-2 at 60. The content of the conversation does

11   not support the Plaintiffs' argument that Mr. Cozart made a claim on his USAA insurance policy

12   during the July 1, 2019 call.  Mr. Cozart made no demand for payment during the call.

13   Further, Mr. Cozart did not file a proof of loss.  The insurance contract provides that "loss

14   will be payable 30 days after [USAA] receives [the insured's] proof of loss" and other conditions

15   are met.  Dkt. 24-2 at 117.  The July 1, 2019 call was not a "claim" on the insurance policy.

16   The parties' remaining arguments will be addressed by the Plaintiffs' causes of action:

17   breach of contract, bad faith, and violations of IFCA and the CPA.

18   **D.  BREACH OF CONTRACT**

19   In Washington, insurance policies are construed as contracts, and their interpretation is a

20   matter of law.  *Preferred Contractors Ins. Co. v. Baker & Son Constr. Inc*., 200 Wn.2d 128, 135

21   (2022).  "A breach of contract is actionable only if the contract imposes a duty, the duty is

22   breached, and the breach proximately causes damage to the claimant." *C 1031 Properties, Inc. v.*

23   *First Am. Title Ins. Co*., 175 Wn. App. 27, 33–34 (2013)(*cleaned up*).

24

USAA moves for summary judgment on Plaintiffs' breach of contract claim arguing that the claim is untimely under the insurance contract's suit limitations clause and that its contractual duties were not triggered because no timely claim was made. Dkt. 24. Summary judgment should be granted on these grounds so its remaining arguments need not be addressed.

1. <u>Timeliness of Breach of Contract Claim</u>

USAA moves for summary judgment on the breach of contract claim arguing that the "suit against us" clause of the insurance contract forecloses Plaintiffs' claims. The "Suit Against Us" clause provides that: "[n]o action can be brought against [USAA] unless [the Cozarts] have: (a) given [USAA] notice of the loss, (b) complied with all other policy provisions, and (c) started the action within two years after the date of loss." Dkt. 24-2 at 117.

Suit limitations clauses, if reasonable, are valid "contractual modifications of statutes of limitations." *W. Beach Condo. v. Commonwealth Ins. Co. of Am.*, 11 Wn. App. 2d 791, 801 (2020).

It is undisputed that the loss (floor damage) occurred in February of 2019. This lawsuit was filed July 14, 2022, over three and a half years later. Dkt. 1. There is no showing that the two year suit limitation clause here is unreasonable; such clauses limiting the timeframe within which to initiate suit to one year have been held valid. *See e.g. W. Beach Condo* at 801; *Ashburn v. Safeco Insurance Co. of America*, 42 Wash. App. 692 (1986); *Yancey v. Automobile Insurance Co. of Hartford*, No. C11-1329RAJ, 2012 WL 12878687 (W.D. Wash. Oct. 23, 2012). Accordingly, USAA's motion for summary judgment on the Plaintiffs' breach of contract claim should be granted and the Plaintiffs' cross motion on the claim denied if the suit limitation clause applies.

The Plaintiffs (Mr. and Mrs. Cozarts' assignee, Agate, suing in the Cozarts' name) argue that USAA violated WAC 284-30-380(5) and so the suit limitation clause does not apply.  Dkt. 26. The Plaintiffs have failed to demonstrate that WAC 284-30-380 precludes application of the suit limitation clause here.  WAC 284-30-380 provides:

> Insurers must not continue negotiations for settlement of a claim directly with a claimant who is neither an attorney nor represented by an attorney until the claimant's rights may be affected by a statute of limitations or a policy or contract time limit, without giving the claimant written notice that the time limit may be expiring and may affect the claimant's rights. This notice must be given to first party claimants thirty days and to third party claimants sixty days before the date on which any time limit may expire.

Application of this regulation is predicated on a "claim" having been made.  As stated above, the July 1, 2019 call was not a claim.

The Plaintiffs argue that USAA should be equitably estopped from raising the suit limitation defense.  Dkt. 26.  To assert equitable estoppel, the Plaintiffs must show: "(1) an admission, statement, or act inconsistent with the claim afterwards asserted; (2) action by the other party on the faith of such admission, statement, or act; and (3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement, or act." *Nickell v. Southview Homeowners Ass'n*, 167 Wn. App. 42, 54 (2012).

As to the first element of their assertion of equitable estoppel, the Plaintiffs point to USAA Adjuster Garza's statement, that if Mr. Cozart provided a diagnostic of the cause of the loss, then coverage might be available without assisting him with the investigation.  Dkt. 26. The Plaintiffs fail to point out how that statement was "inconsistent with the claim afterwards asserted."  They did not make a sufficient showing as to the first element.  Further, the Plaintiffs do not show how the Plaintiffs, on the faith of such an admission, acted, which is required for the second element.

1   The Plaintiffs fail to demonstrate that all the elements of equitable estoppel are met here and do

2   not defeat USAA's assertion that the suit limitation clause applies.

3                           2.   Breach of Contractual Duties

4        A breach of contract claim is only available if the contract imposes a duty that was breached.

5   *C 1031 Properties, Inc.* at 33.  The Plaintiffs fail to point to any contractual duties that USAA

6   breached.  The July 1, 2019 call was not a claim and so USAA did not breach the contract by

7   failing to pay them benefits as a consequence of that call.  While they contend that USAA was

8   obligated to provide them with claims forms, instructions, or policy conditions as required WAC

9   284-30-360(4), this regulation is also predicated on a claim having been made.  WAC 284-30-

10  360(4)("upon receiving notification of a claim, every insurer must promptly provide necessary

11  claim forms . . .").  Further, there is no showing that USAA breached a provision of the contract

12  in regard to the June 14, 2022 pre-litigation demand letter.  The Plaintiffs have failed to point to

13  a contractual duty that USAA breached.

14                          3.   Conclusion on Breach of Contract

15       The July 1, 2019 call was not a claim for benefits under the USAA insurance policy.  The

16  Plaintiffs did not timely file this lawsuit.  Further, even if the suits limitation clause did not

17  apply, the Plaintiffs failed to point to a contractual duty that USAA breached.  Their breach of

18  contract cause of action should be dismissed.

19  **E.  BAD FAITH**

20       In Washington State, insurers owe a duty to act in "good faith, abstain from deception, and

21  practice honesty and equity in all insurance matters."  RCW 48.01.030.  A claim that an insurer

22  acted in bad faith is "analyzed applying the same principles as any other tort: duty, breach of that

23  duty, and damages proximately caused by any breach of that duty."  *Smith v. Safeco Ins. Co.*, 150

24

1    Wash. 2d 478, 485 (2003).  To establish bad faith, an insured must show that "the breach was

2    unreasonable, frivolous, or unfounded."  *Kirk v. Mt. Airy Ins. Co.* 134 Wash. 2d 558, 560

3    (1998).  Ordinarily, "[w]hether an insurer acted in bad faith remains a question of fact." *Smith* at

4    485.  "Questions of fact may be determined on summary judgment as a matter of law where

5    reasonable minds could reach but one conclusion." *Id*.

6       The Plaintiffs (Mr. and Mrs. Cozarts' assignee, Agate, suing in the Cozarts' name)

7    contend that USAA acted in bad faith regarding the July 1, 2019 call when it failed to investigate

8    the Cozarts' claim and denied their claim without a reasonable explanation.  Dkt. 25.  The

9    Plaintiffs argue that USAA acted in bad faith when it denied their June 2022 claim.

10      USAA's motion for summary judgment on the Plaintiffs' bad faith cause of action (Dkt.

11    24) should be granted.  USAA has shown that the July 1, 2019 call did not constitute a claim for

12    benefits and that it did not deny benefits during that call.  While an insurer acts in bad faith when

13    it fails to conduct a reasonable investigation into the insured's claim before denying coverage,

14    *Safeco Ins. Co. of Am. v. Butler*, 118 Wash.2d 383, 388 (1992), no claim was made in

15    2019.  Further, presuming that the Plaintiffs asserted a claim in June of 2022 when the lawyers

16    sent the pre-litigation demand letter, USAA's denial of the claim based on the suit limitations

17    clause was reasonable.  The Plaintiffs have not pointed to facts, if believed, that USAA took

18    action that "was unreasonable, frivolous, or unfounded."  *Kirk* at 560.  The Plaintiffs' bad faith

19    cause of action should be dismissed.

20    **F.  IFCA AND CLAIMS HANDLING REGULATIONS**

21      Similarly, "IFCA explicitly creates a cause of action for first party insureds who were

22    unreasonably denied a claim for coverage or payment of benefits."  *Perez-Crisantos v. State*

23    *Farm Fire and Casualty Co*., 187 Wash.2d 669, 680 (2017)(*cleaned up*).

24

1       Plaintiffs (Mr. and Mrs. Cozarts' assignee, Agate, suing in the Cozarts' name) point to six

2  regulations that they contend USAA violated that form their IFCA cause of action.  Dkts. 24, 26,

3  and 30.  The first of these regulations provide:

4       Every insurer must complete its investigation of a claim within thirty days after
          notification of claim, unless the investigation cannot reasonably be completed
5       within that time. All persons involved in the investigation of a claim must provide
          reasonable assistance to the insurer in order to facilitate compliance with this
6       provision.

7  WAC 284-30-370.  The next four are related; they are designated by the legislature as "unfair

8  methods of competition and unfair or deceptive acts or practices of the insurer in the business of

9  insurance, specifically applicable to the settlement of claims" and provide:

10       . . . Failing to acknowledge and act reasonably promptly upon communications
          with respect to claims arising under insurance policies.
11

12       . . . Failing to adopt and implement reasonable standards for the prompt
          investigation of claims arising under insurance policies.

13       . . . Refusing to pay claims without conducting a reasonable investigation . . .

14       Failing to promptly provide a reasonable explanation of the basis in the insurance
          policy in relation to the facts or applicable law for denial of a claim or for the
15       offer of a compromise settlement . . .

16  WAC 284-30-330 (2)-(4) and (13).

17       To the extent the Plaintiffs assert an IFCA cause of action based on violations of these

18  provisions, USAA's motion for summary judgment (Dkt. 24) should be granted on them and the

19  Plaintiffs' motion for summary judgment (Dkt. 25) should be denied.  Each of these provisions

20  are predicated on whether a "claim" was made.  As stated above, a claim was not made during

21  the July 1, 2019 call.  Presuming that the Plaintiffs asserted a claim in June of 2022 when the

22  lawyers sent the pre-litigation demand letter, the Plaintiffs fail to demonstrate that any of

23  USAA's actions violated WAC 284-30-370 or WAC 284-30-330 (2)-(4) and/or (13).

24

As the sixth ground for their IFCA claim, the Plaintiffs also point to WAC 284-30-350 (2), which provides: "[n]o insurance producer . . . shall conceal from first party claimants benefits, coverages or other provisions of any insurance policy or insurance contract when such benefits, coverages or other provisions are pertinent to a claim."

The Plaintiffs' motion (Dkt. 25) for violation of this regulation should be denied and USAA's motion (Dkt. 24) regarding violation of this regulation should be granted.  Arguably, this provision of IFCA's regulations does not require a "claim" be made before it applies.  The Plaintiffs, however, fail to point to any evidentiary support for their contention that USAA violated this regulation.  After the July 1, 2019 phone call, USAA sent Mr. Cozart a copy of the insurance policy as he requested.

The Plaintiffs have failed to point to issues of fact that they "were unreasonably denied a claim for coverage or payment of benefits" to support their IFCA cause of action.  *Perez-Crisantos* at 680.  That cause of action should be dismissed.

**G. CPA**

Violations of the CPA require a Plaintiff to establish "five distinct elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co*., 105 Wash.2d 778, 780 (1986).  "A per se unfair trade practice exists when a statute which has been declared by the Legislature to constitute an unfair or deceptive act in trade or commerce has been violated." *Id*. at 786.  As to the first CPA factor, the Washington State Supreme Court recently noted that "[i]t is well established that insureds may bring private CPA actions against their insurers for breach of the duty of good faith or for

violations of Washington insurance regulations." *Peoples v. United Servs. Auto. Ass'n*, 194 Wash.2d 771, 778 (2019).

USAA's motion for summary judgment on the Plaintiffs' cause of action for violation of the CPA (Dkt. 24) should be granted.  As to the first element, whether USAA engaged in "an unfair or deceptive act or practice" the Plaintiffs contend USAA's handling of the July 1, 2019 claim and the July 22, 2022 denial of the June 13, 2022 claim (the written pre-litigation demand letter) constituted bad faith and violated IFCA regulations.  Dkts. 24, 26 and 30.  As stated above in the discussion on the Plaintiff's bad faith cause of action, the Plaintiff has failed to point to issues of fact, that if believed, show that USAA's conduct in handling Mr. Cozart's July 1, 2019 call or denial of the June 13, 2022 pre-litigation demand (to the extent it could be considered a claim) was unreasonable.  *Id.*  As stated above in the discussion on the Plaintiff's IFCA violations cause of action, the Plaintiff has failed to show that there are issues of fact that support a finding that USAA violated IFCA regulations.  Accordingly, they fail to make a showing as to the CPA first element.  The Plaintiffs' CPA cause of action should be dismissed.

### III.   ORDER

Therefore, it is hereby **ORDERED** that:

- Plaintiffs Mike and Blythe Cozart's Motion for Summary Judgment (Dkt. 25) **IS DENIED;**

- USAA's Motion for Summary Judgment (Dkt. 24) **IS GRANTED;** and
  - This case **IS DISMISSED.**

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

1    Dated this 20th day of November, 2023.

2

3    ROBERT J. BRYAN
     United States District Judge

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24